304 So.2d 357 (1974)
C. P. GREEN and Marjorie Green
v.
TACA INTERNATIONAL AIRLINES and United States Fidelity and Guaranty Company.
No. 54768.
Supreme Court of Louisiana.
December 2, 1974.
*358 Lawrence D. Wiedemann, Wiedemann & Fransen, New Orleans, for USF&G and New Orleans Aviation Bd. of the City of New Orleans, for defendants-applicants.
A. R. Christovich, Jr., Christovich & Kearney, New Orleans, for defendant-respondent, Taca International Airlines.
Richard E. Gerard, Jr., Scofield, Bergstedt & Gerard, Lake Charles, for plaintiffs-respondents.
MARCUS, Justice.
This is a suit by Mr. and Mrs. C. P. Green against Taca International Airlines [hereinafter referred to as TACA] and United States Fidelity & Guaranty Company [hereinafter referred to as USF&G]. Plaintiffs seek to recover general and special damages for Mrs. Green's physical injuries arising from her slip and fall while preparing to board a TACA aircraft at Moissant International Airport in Jefferson Parish, Louisiana. USF&G is the public liability insurer of the New Orleans Aviation Board, which is an agency of the City of New Orleans charged with the operation and maintenance of the airport. It denies liability and alternatively seeks indemnity from TACA by third party demand *359 should it be cast in judgment. TACA denies liability and by third party demand alternatively seeks indemnity from the New Orleans Aviation Board should it be found liable for plaintiffs' damages.
The trial court found both defendants jointly liable, awarding Mrs. Green $7,500.00 for her personal injuries (which consist primarily of aggravation of a pre-existing arthritic condition in the neck, back and right hip) and Mr. Green $838.00 for his wife's medical expenses. Both third party demands were dismissed. Both defendants appealed. The court of appeal affirmed the award in plaintiffs' favor and the trial court's dismissal of USF&G's third party demand against TACA, but reversed that portion of the judgment dismissing TACA's third party demand against the Aviation Board and awarded TACA full indemnity for its liability to plaintiffs. Green v. Taca International Airlines, 293 So.2d 198 (La.App. 4th Cir. 1974). Upon the application of the Aviation Board and USF&G, we granted certiorari. 294 So.2d 822 (La.1974).
The facts giving rise to this controversy are not in serious dispute. The accident in question occurred at approximately 5:45 a. m. on February 22, 1970, while Mr. and Mrs. Green were preparing to board TACA Flight No. 111 to Guatemala, which departed from Moissant Airport. It was dark at the time. The aircraft was parked on the landing apron approximately 120 feet from the gate leading from the passenger waiting room. The unusually long distance from the gate to the aircraft was due to the presence of two other aircraft, which were also parked at the same gate. Mr. and Mrs. Green had checked through the ticket agent at the boarding gate and were following a string of other passengers, who were boarding the same aircraft, when Mrs. Green suddenly fell to the concrete, injuring herself.
The cause of the fall was a hole in the concrete approximately nine inches by four inches by two inches deep, with a metal loop in the center, and variously referred to as a "safety ground installation," "tie ring area," or "padeye." The purpose of safety ground installations is to ground fueling trucks while servicing aircraft and thus prevent static electrical ignition of the fuel. The Federal Aviation Administration requires safety ground installations in all ramp construction. Thus, the apron adjacent to the passenger terminal contained many such indentations. Although the safety ground installations are ordinarily painted with yellow traffic paint for easy detection, the paint on the indentation that caused Mrs. Green's fall had substantially worn away and needed repainting.
The sole issue before us is whether TACA is entitled to full indemnity or is limited to its right to contribution from the Aviation Board as a joint tortfeasor. Indemnity shifts the entire loss from a tort-feasor only technically or constructively at fault to one primarily responsible for the act that caused the damage. Appalachian Corp. v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922); see also Lee v. City of Baton Rouge, 243 La. 850, 147 So.2d 868 (1963); Second Church of Christ, Scientist v. Spencer, 230 La. 432, 88 So.2d 810 (1956). Contribution apportions the loss among joint tortfeasors and requires each to pay his virile share of the damages that result from the wrong. La.Civil Code arts. 2103, 2104, 2161, 2324 (1870). Thus, if TACA and the Aviation Board are found to be concurrently and actively at fault, TACA is not entitled to indemnity, and the judgment of the court of appeal must be reversed. However, if TACA is found to be only constructively or technically at fault and the Aviation Board to be actively at fault, the court of appeal was correct in awarding indemnity, and its judgment must be affirmed.
The duty owed by a common carrier in Louisiana to its passengers is stringent, whether it be termed "the highest *360 standard of care,"[1] "highest degree of vigilance, care and precaution for the safety of those it undertakes to transport,"[2] or "the strictest diligence."[3] This duty embraces those risks to which passengers are exposed by unsafe conditions in the boarding area. Cassady v. Texas & P. R.R., 131 La. 626, 60 So. 15 (1912); Reynolds v. Texas & P. R.R., 37 La.Ann. 694 (1885); Peniston v. Chicago, St. L. & N. O. R.R., 34 La.Ann. 777 (1882). The slightest breach constitutes actionable negligence. La.Civil Code art. 2316 (1870); Clerc v. Morgan's La. & Tex. R.R. Co., 107 La. 370, 31 So. 886 (1902). We find that, under the existing circumstances, TACA breached its duty of care to Mrs. Green by failing to observe that the yellow traffic paint usually applied to the safety ground installations had worn away and to take appropriate steps to remedy the hazard thus presented or to warn Mrs. Green of the risk involved in traversing the area extending from the gate to the aircraft during darkness. This constituted negligence upon the part of TACA, which was a proximate cause of the accident, and rendered it liable for damages resulting from the fall. Thus, TACA cannot be said to have been constructively or technically at fault; its fault was active.
The New Orleans Aviation Board was charged with the duty of maintaining the landing aprons of the airport. Its neglect to paint the safety ground installations with sufficient regularity so as to be visible to those using that area of the terminal was a breach of its duty of maintenance. This negligence contributed to the cause of the accident, and the Aviation Board is responsible for whatever damage was caused thereby. La.Civil Code arts. 2315, 2316 (1870). Thus, the Aviation Board was actively negligent in concurrence with TACA.
Both parties having been actively and concurrently at fault, the rule of contribution between joint tortfeasors ordinarily applies. La.Civil Code art. 2324 (1870). However, the Aviation Board and its insurer, USF&G, urge that the lease of airport space between the Aviation Board and TACA requires the latter to indemnify the former in this case.[4] We find nothing in the lease between the parties that supports the contention that indemnity is due.
The Aviation Board argues that the first clause of the indemnity agreement requires the indemnitor (TACA) to indemnify fully the indemnitee (Aviation Board), without any express statement of assumption of indemnitee's *361 negligence, where joint negligence is found on the part of both parties. This contention is completely untenable. The indemnity agreement provides that TACA will indemnify the Aviation Board for all claims arising out of damages caused by its negligence; however, it then specifically provides that TACA shall not be liable for any damages occasioned by the negligence of the Aviation Board. The language could not be more clear and explicit. TACA has limited its indemnification to the Aviation Board for claims based upon its own negligence and has specifically excluded its liability for damages caused by the negligence of the Aviation Board. Thus, in view of the clear and unambiguous language of the indemnity agreement, we are unable to say that TACA is required to indemnify the Aviation Board for claims occasioned by the negligence of the Aviation Board, whether that negligence is the sole or concurrent cause of the damages.
Agreements have the effect of law between the parties, and the courts are bound to give effect to all such contracts according to the true intent of the parties. That intent is determined by the words of the contract when they are clear and explicit. La.Civil Code art. 1945 (1870). Additionally, a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. This rule is equally applicable whether the damage is caused by the sole negligence of the indemnitee or the concurrent negligence of the indemnitee and indemnitor.[5] Thus, since the basis of the Aviation Board's liability to plaintiffs is its own negligence and not the negligence of TACA, no indemnity is due.
For the reasons assigned, the judgment of the court of appeal is reversed, and the judgment of the district court is reinstated.
NOTES
[1] King v. King, 253 La. 270, 278, 217 So. 2d 395, 398 (1968).
[2] Wise v. Prescott, 244 La. 157, 165-166, 151 So.2d 356, 359 (1963), quoting Wise v. Prescott, 142 So.2d 613, 620 (La.App.4th Cir. 1962).
[3] Hopkins v. New Orleans Ry. & Light Co., 150 La. 61, 72, 90 So. 512, 516 (1922).
[4] The relevant provision in the lease provides:

Lessee agrees fully to indemnify, and save and hold harmless, the said Lessor from and against all claims and actions and all expenses incidental to the investigation and defense thereof, based upon or arising out of damages or injuries to persons or properly, caused by the fault or negligence of Lessee, its agents or employees, in the use or occupancy of the said leased premises by Lessee; provided, however, that Lessee shall not be liable for any injury or damage or loss occasioned by the negligence of Lessor, its agents or employees; and provided further that Lessor shall give to Lessee prompt and reasonable notice of any such claims or actions and Lessee shall have the right to investigate, compromise and defend the same. Lessee agrees to carry, and keep in force, public liability insurance covering personal injury and property damage, and such other insurance as may be necessary to protect Lessor herein from such claims and actions aforesaid. Without limiting its liability as aforesaid Lessee agrees to carry and keep in force such insurance with limits of liability for personal injury in a sum not less than $100,000.00 for any one person and $1,000,000.00 for any one accident; and for the property damage in a sum of not less than $500,000.00; and to furnish Lessor with proper certificate certifying that such insurance is in force.
(Emphasis added.)
[5] See Cole v. Chevron Oil Co., 477 F.2d 361 (5th Cir.), cert. denied, 414 U.S. 858, 978, 94 S.Ct. 300, 38 L.Ed.2d 222 (1973); Strickland v. Nutt, 264 So.2d 317 (La.App.1st Cir.), cert, denied, 262 La. 1124, 266 So.2d 432 (1972).