MARC E. JOHNSON, Judge.
 

 12This appeal arises from a jury verdict awarding damages in favor of Defendant/Appellee, Lauricella Land Company, L.L.C. (hereinafter referred to as “Lauri-cella”), and against PlaintiffyAppellant, the State of Louisiana, Department of Transportation and Development (hereinafter referred to as “DOTD”), in the 24th Judicial District Court, Division “L”, for an expropriation matter. Both DOTD and Lauricella appeal the verdict, while DOTD also appeals the denial of a Motion for Directed Verdict. For the following reasons, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 On March 4, 2008, DOTD filed a Petition and an Order of Expropriation pursuant to LSA-R.S. 48:451,
 
 et seq.
 
 DOTD named Lauricella and The Pep Boys— Manny, Moe
 
 &
 
 Jack, Inc. as defendants to the action. The petition requested the immediate taking in full ownership of the property of the defendants located at the bottom of the Huey P. Long Bridge on Clearview Parkway (Parcel Numbers 22-3, |s22-4, and 23-3) for the purpose of constructing the “Huey P. Long Bridge Widening Westbank & Eastbank Approaches & Main Bridge Deck Widening State Routes LA-US 90, LA 3287, LA 48, & LA 18” project (hereinafter referred to as “the Project”).
 
 1
 
 The properties were located in a desirable, high-traffic area and were extremely valuable for commercial retail use before the taking. DOTD deposited $6,175,253.00 in the registry of the court for compensation for the expropriation.
 

 The Order of Expropriation was signed by the trial cohrt on March 10, 2008. An
 
 Ex Parte
 
 Joint Motion to Withdraw Funds from the Registry of the Court was signed by the trial court on May 14, 2008. On November 19, 2008, Lauricella filed an Answer and Reconventional Demand requesting an amount sufficient to compensate Lauricella to the full extent of its loss for
 
 *716
 
 the taking.
 
 2
 

 Prior to the commencement of trial, DOTD altered its right-of-way plans regarding Parcel 23-8. Parcel 23-3 is located on the FedEx/Kinko’s site on Clearview Parkway. The original right-of-way plan designed by DOTD included the taking of an area on the FedEx/Kinko’s site, which encompassed seven parking spaces. Additionally, DOTD’s original right-of-way plan included the removal of a semaphore traffic signal, which allowed a lane for protected left turn onto the FedEx/Kinko’s site, at the intersection of Clearview Parkway and East Corporate Boulevard; nonetheless, the turning lane was not eliminated. The altered right-of-way plan declared Parcel 23-3 “no longer necessary for the project.” The altered right-of-way plan continued to include the removal of the semaphore traffic signal. However, a traffic sign would replace the traffic signal.
 

 On October 30, 2009, DOTD sent Lauri-cella a letter via certified mail | informing Lauricella that final approval had been received to sell Parcel 23-3. DOTD offered to sell Parcel 23-3 to Lauricella for $71,964.00 through a private sale. Lauri-cella did not accept DOTD’s offer.
 

 A jury trial was held on November 16-19, 2009 on the matter. The jury was asked to determine just compensation for the three parcels taken (Parcel Numbers 22-3, 22-4, and 23-3) and severance damages to the remainder of the property, and was presented nine questions as Special Jury Interrogatories. After a four day trial, the jury awarded Lauricella a total of $9,601,698.00 in just compensation and severance damages. In particular, the jury awarded $608,107.00 as just compensation for the damages to the remainder of the land and improvements on the FedEx/Kin-ko’s site as a result of the taking, and $0.00 as just compensation for the loss of rental income relating to the FedEx/Kinko’s site as a result of the taking. The jury verdict was incorporated in the Judgment signed on December 8, 2009.
 

 DOTD filed a Motion for Supplemental Deposit and to Amend Pleadings to Conform to Evidence on December 8, 2009 requesting to be allowed to amend its Petition and be allowed to deposit additional funds into the registry of the court for just compensation. The trial court sign an
 
 ex parte
 
 order granting DOTD’s motion on the same date. In response, Lauricella filed a Motion for Partial New Trial and/or Partially to Vacate Order on December 17, 2009 challenging the permission of the amendment of the pleadings by DOTD. On January 12, 2010, a Consent Judgment was issued granting Lauricella’s motion only in the respect that the rights of DOTD and Lauricella were fully reserved to appeal or answer any appeal of the December 8, 2009 Judgment. The instant appeal followed.
 

 On appeal, DOTD only challenges the award as just compensation for the remainder of the land and improvements on the FedEx/Kinko’s site as a result of |sthe taking of Parcel 23-3.
 

 ASSIGNMENTS OF ERROR
 

 On appeal, DOTD alleges 1) the trial court erred as a matter of law in denying its Motion for Directed Verdict; 2) the jury erred in awarding severance damages without considering the effects of the alteration to the Project as proposed and planned by DOTD; and, 3) the jury erred in awarding severances damages based
 
 *717
 
 upon a potential further loss of a traffic control signal.
 

 In its Answer to the appeal, Lauricella alleges the amount of compensation awarded does not constitute just compensation for 1) the taking of its land, building and improvements by DOTD, and 2) damages for lost rental income.
 
 3
 
 Additionally, Lau-ricella seeks to recover additional attorneys’ fees incurred in responding to DOTD’s appeal.
 

 LAW AND ANALYSIS
 

 DOTD’s First Assignment of Error
 

 DOTD alleges the trial court erred in not granting its Motion for Directed Verdict when the testimony established that damages were too remote and speculative to be compensable for Parcel No. 28-8. DOTD argues the testimony presented and the record establishes that 1) DOTD declared that Parcel No. 23-3 was not necessary for the Project; 2) the Project did not affect Parcel No. 23-3; and for these reasons, 3) no taking occurred that would give rise to a claim for damages under Title 48; and, 4) Lauricella’s evidence related only to a possible future claim in inverse condemnation. DOTD further argues the future damages for the traffic signal were highly speculative because DOTD has the legal right to amend its | (¡construction plans at any time prior to the completion of a project and has the right to control traffic without incurring liability for exercise of such control pursuant to
 
 Constance v. DOTD,
 
 626 So.2d 1151 (La.1993). Lastly, DOTD argues the determination of whether Lauricella is entitled to severance damages for alterations in traffic control or patterns is a question of law that should have been ruled upon by the trial judge in the Motion for Directed Verdict, not a factual determination by the jury.
 

 The trial judge has much discretion in determining whether or not to grant a motion for directed verdict.
 
 Warden v. Richoux,
 
 09-794, p. 15 (La.App. 5 Cir. 3/23/10); 40 So.3d 139, 149,
 
 writ denied,
 
 10-0921 (La.6/25/10);, 38 So.3d 340,
 
 citing Delaney v. Whitney National Bank,
 
 96-2144, pp. 9-10 (La.App. 4 Cir. 11/12/98); 703 So.2d 709, 717. A motion for directed verdict should be granted when, after considering all evidentiary inferences in the light most favorable to the mover’s opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict.
 
 Id., citing Davis v. J.C. Penney Stores,
 
 05-881, p. 11 (La.App. 5 Cir. 4/11/06); 930 So.2d 130, 136. If there is substantial evidence opposed to the motion,
 
 ie.,
 
 evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the case submitted to the jury.
 
 Id., citing Thomas v. A.P. Green Industries, Inc.,
 
 05-1064, p. 19 (La.App. 4 Cir. 5/31/06); 933 So.2d 843, 858. Further, the appellate court must also determine if the record supports the granting of a directed verdict, based not on a credibility determination (a factual issue), but on a sufficiency of evidence determination (a question of law).
 
 Davis v. Board of Supervisors of Louisiana State University and Agr. and
 
 
 *718
 

 Mechanical College, et al.,
 
 03-2219, p. 8 (La.App. 4 Cir. 11/17/04); 887 So.2d]7722, 727.
 

 In the instant case, we are of the opinion the severance damage claims presented by Lauricella were properly before the jury to determine as questions of fact, which would include the issue of traffic alterations by DOTD. The record shows that Lauricella and DOTD offered testimony concerning the severance damage claims for the remaining property after the taking of Parcel 23-3. The record contains sufficient evidence for reasonable and fair-minded jurors to reach different conclusions on whether Lauricella was entitled to severance damages. We find the motion for directed verdict was properly denied by the trial court. Accordingly, this issue is without merit.
 

 DOTD’s Second Assignment of Error
 

 DOTD alleges the jury committed manifest error when it awarded severance damages for Parcel No. 23-3, despite the absence of a reasonable factual basis for such an award. DOTD contends the award of severance damages was clearly wrong because the testimony and evidence actually established that Lauricella did not sustain any compensable severance damages. DOTD avers the evidence establishes that Lauricella’s Parcel No. 23-3 was no longer necessary for the Project and would not be affected by the Project, and there was no evidence of damages related to the actual taking. DOTD further avers the only testimony heard by the jury that addressed the revised plans was offered by DOTD’s expert, whose testimony established the elimination of Parcel No. 23-3 from the Project also eliminated Lauricella’s entitlement to severance damages.
 

 Conversely, Lauricella contends facts and assertions were presented to the jury from both sides and were taken into consideration. Because all evidence was considered by the jury, Lauricella argues there can be no manifest error, and the award for severance damages cannot be disturbed. Additionally, Lauricella | ^contends the scope of DOTD’s taking was never amended or altered, and DOTD is still the owner of Parcel 23-3.
 

 In
 
 State, Dept. of Transp. & Development v. Schwegmann Westside Expressway, Inc.,
 
 95-261, pp. 8-9 (La.3/1/96); 669 So.2d 1172, 1177, the Louisiana Supreme Court addressed the standard of review for a matter of this sort by stating the following:
 

 Our rules of manifest error state that before a factfinder’s verdict may be reversed, there must be evidence within the record, such that a reasonable factual basis does not exist for the verdict, and the record establishes the verdict is manifestly erroneous. An appellate court should not upset factual findings of a trial court absent manifest error or unless clearly wrong. Although the factfinder is afforded deference, appellate courts and this court nonetheless have a duty to review facts. Upon review, an appellate court may not merely decide if it would have found the facts differently, but rather the trial court’s decision should be affirmed when its judgment is not clearly wrong or manifestly erroneous. The appellate court has a constitutional duty to perform, and it has the right to determine whether the trial court’s verdict was clearly wrong based on the evidence. (Citations omitted).
 

 Louisiana Constitution, Article I § 4(B)(1),
 
 Right to Property,
 
 provides, “Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.” The Section further states,
 

 
 *719
 
 In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss. Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation. LSA-Const., Art. I § 4(B)(5).
 

 Additionally, LSA-R.S. 48:453 provides, in pertinent part,
 

 A. The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court, without considering any ^change in value caused by the proposed improvement for which the property is taken.
 

 B. The measure of damages, if any, to the defendant’s remaining property is determined on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.
 

 C. The owner shall be compensated to the full extent of the loss.
 

 Severance damages may be awarded in expropriation cases when appropriate or properly proven.
 
 State, Dept. of Transp. and Development v. Restructure Partners, L.L.C.,
 
 07-1745, p. 7 (La. App. 1 Cir. 3/26/08); 985 So.2d 212, 221. The term “severance damages” describes those compensable damages that flow from the partial expropriation of a tract of land,
 
 ie.,
 
 the difference between the value of the remaining property before and after the taking.
 
 Id.
 
 The landowner has the burden of proving severance damages with legal certainty by a preponderance of the evidence.
 
 Id.
 

 Necessity of Parcel 23-3
 

 DOTD argues that its amended plans for the Project filed into the record prior to trial November 17, 2009 documenting that no portion of Lauricella’s Parcel 23-3 would be used in the Project illustrated there is no longer a need for the property. DOTD also argues the testimony of Richard L. Savoie, DOTD’s Deputy Chief Engineer, confirmed that Parcel 23-3 was eliminated from the Project because it was no longer needed. In sum, DOTD contends the record is well documented that it reassessed the need for Parcel 23-3; declared it no longer necessary for the Project; and, offered the property back to Lauricella, as required by LSA-Const. Art. I § 4(H).
 

 When referencing surplus land, LSA-Const., Art. I § 4(H) states, in pertinent part,
 

 (2)
 
 Within one year after the completion of the project
 
 for which the property was expropriated, the state or its political | ^subdivision which expropriated the property shall identify all property which is not necessary for the public purpose of the project and declare the property as surplus property.
 

 (3) All expropriated property identified as surplus shall be offered for sale to the original owner or his heir, or, if there is no heir, to the successor in title to the owner at the time of expropriation at the current fair market value, within two years after completion of the project. If the original owner, heir, or other successor in title refuses or fails to purchase the surplus property within three years from completion of the project, then the
 
 *720
 
 surplus property may be offered for sale to the general public by competitive bid. (Emphasis added).
 

 In this matter, in a letter dated October 30, 2009, DOTD offered to sell Lauricella, through its counsel of record, the subject property for $71,964.00, which was the appraised value at that time, through a private sale. DOTD informed Lauricella that if it had not received a response within 15 days, it would advertise the property for sale at a public bid. Although DOTD complied with LSA-Const., Art. I § 4(H) in offering the property to Lauricella before placing it for competitive bidding, it did not comply with the time frame set forth in the Section. The Section provides that DOTD is mandated to identify surplus property within one year after the completion of the project. To date, the Project has not been completed. As a result, DOTD’s offer to Lauricella did not comply with the Section, and the property was not properly classified as “surplus.” Therefore, DOTD fails in proving that Parcel 23-3 is no longer necessary for the Project.
 

 Testimony presented, at trial for severance damages
 

 DOTD avers that the testimony of Angela Lemoine Lakvold, DOTD’s real estate expert, was the only testimony relative to the effects of the completion of the Project as alternatively proposed. DOTD further avers that Ms. Lackvold’s testimony provided evidence that the subject property had not been impacted by the Project, which proves that Lauricella is not entitled to severance damages.
 

 It is elementary that where a case is tried by a jury, that jury is the trier of Infact.
 
 State, Dept. of Transp. and Development v. August Christina & Bros., Inc.,
 
 97-244, p. 8 (La.App. 5 Cir. 2/11/98); 716 So.2d 372, 377,
 
 citing State, DOTD v. Scramuzza,
 
 95-786 (La.App. 5 Cir. 4/30/96); 673 So.2d 1249,
 
 aff'd in part, rev’d on other grounds in part,
 
 96-1796 (La.4/8/97); 692 So.2d 1024. The question of what damages will appropriately compensate the landowner is one of fact.
 
 Id.
 
 at 11, 716 So.2d at 378. Such determination is necessarily dependent on the evidence presented by expert witnesses.
 
 Id.
 
 at 12, 716 So.2d 372. However, the fact finder is not obligated to accept an expert’s opinion in expropriation cases, since those opinions are not binding and are merely advisory in nature.
 
 Id.
 
 The informed and reasoned opinion of experts, corroborated by the facts in the record, may adequately prove a severance damage loss, especially where accepted by the trier of fact.
 
 State, Dept. of Transp. and Development v. Restructure Partners, L.L.C., supra.
 

 In the instant case, the members of the jury were allowed to hear the testimony of four experts regarding severance damages: Angela Lemoine Lakvold, Wade R. Ragas, Michael J. DeFelice and Bennett Oubre. Mrs. Lakvold and Mr. DeFelice were tendered by DOTD and accepted as experts in real estate appraisal for just compensation. Mr. Ragas and Mr. Oubre were tendered by Lauricella.
 

 Mr. Ragas was accepted as an expert in real estate appraisals. Although he did not testify to the altered right-of-way plans of DOTD, Mr. Ragas testified that Lauricella was entitled to severance damages for the removal of the traffic signal and the loss of parking spaces included in the original right-of-way plans. Mr. Ragas addressed the importance of the traffic signal and its removal. He noted that it will be harder to enter and exit the FedEx/Kinko’s site without the protected semaphore traffic signal.
 

 Mr. Oubre was accepted as an expert in real estate. He testified that he conducted
 
 *721
 
 an appraisal review of the appraisals submitted by DOTD and the 112amount of just compensation. Mr. Oubre questioned the validity of the values included in both of the DOTD appraisals because the appraisers had not worked in the subject area prior to working on their appraisals for the Project. Additionally, Mr. Oubre testified that the altered access to the FedEx/Kin-ko’s site would lessen the desirability of the property. He stated a buyer will not pay as much for it, or a national retailer will pay less to lease it because it will not attract as many visitors. Mr. Oubre also expressed concern that neither of DOTD’s appraisals provided an adjustment for the change of the access to the property. Mr. Oubre did not testify as to the altered right-of-way plans.
 

 After listening to the testimony of the experts, the jury returned a verdict awarding Lauricella $608,107.00 for severance damages to the remainder of the land and improvements on the FedEx/Kinko’s site as a result of the taking. The jury favored the testimonies of Lauricella’s expert witnesses over the testimonies of DOTD’s expert witnesses by rejecting them in part or in total.
 

 After review of the testimony presented, we do not find the jury was manifestly or clearly erroneous in its finding that Lauri-cella was entitled to severance damages. Although testimony was presented by DOTD that Lauricella did not and will not incur any damages to the remainder of the land on the FedEx/Kinko’s site due to the alteration in the Project’s plans, there is evidence in the record (through the testimonies of Mr. Ragas and Mr. Oubre) that support the jury’s finding that Lauricella was entitled to the $608,107.00 in severance damages.
 

 DOTD’s Third Assignment of Error
 

 DOTD alleges the jury erred in awarding damages for an anticipated alteration of a controlled intersection when no property of Lauricella was taken for that purpose. DOTD argues the anticipated alteration of the traffic control signal at | iathe intersection of Clearview Parkway and East Corporate Boulevard from a semaphore signal to signage control does not require nor does it emanate from the taking of any property from Lauricella, and the anticipated action is merely a discretionary function within its executive authority to implement without incurring liability therefor. DOTD further contends Lauricella failed to introduce sufficient evidence that the anticipated alteration in signage affects its property. Since the turning lane in question services the general area, not just the subject property, DOTD avers Lauricella has no vested property right that will be affected by the change.
 

 In response, Lauricella contends it was entitled to the severance damages award because a landowner is entitled to severance damages if the value of his property is diminished by change to access caused by changes in traffic lights, turn lanes, curb cuts, etc., provided that those changes are part of the project. Additionally, Lauricella contends LSA-R.S. 48:458 requires severance damages be based upon completion of the project, whether or not DOTD has finished construction. Lauri-cella argues that any other interpretation of the statute would leave DOTD free to shortchange the landowner simply by waiting until after the expropriation trial to build the project and inflict damages.
 

 Severance damages represent economic losses.
 
 State, Dept. of Transp. and Development v. Unverzagt,
 
 590 So.2d 680, 683 (La.App. 3rd Cir.1991),
 
 citing State, through Dept. of Highways v. Landeche,
 
 400 So.2d 241, 246 (La.App. 4th Cir.1981). Inconvenience to the owner, diversion of traffic, or changes in attending
 
 *722
 
 circumstances are not proper elements of severance damages, unless they dimmish the value of the owner’s remaining property.
 
 Id.
 
 If a public authority substantially interferes with the owner’s right of access, he has a constitutional right to just compensation for his loss; but where access is not substantially 114impaired or is impaired only on a temporary basis and/or the inconvenience to the owner is not peculiar to him, but general to the public at large, no recovery is allowed.
 
 Lambert v. State through Dept. of Transp. & Development,
 
 96-160, p. 6 (La.App. 5 Cir. 10/16/96); 683 So.2d 839, 842.
 

 At trial, Lauricella presented testimony from John Fernand Exnicios, who was tendered and accepted as an expert in traffic engineering. Mr. Exnicios testified that he reviewed the original plans drafted by DOTD, the configuration of the roadways, and the traffic count in the area of Parcel 23-3. He testified the plans would prohibit traffic from crossing Clearview Parkway from west to east, and that the traffic from that direction would have to make a U-turn farther down Clearview Parkway to access the property. He also testified that the traffic from Earhart Expressway will have an unprotected left turn into traffic coming from the Huey P. Long Bi'idge at 45mph. In addition to Mr. Exnicios’ testimony, Mr. Ragas also testified that the removal of the semaphore traffic signal would diminish the utility of the remaining property because it would be harder for customers to enter and exit the property and national tenants would be less likely to lease the property in the future. Furthermore, Mr. Louis Lauricella, the Managing Member of the Lauricella, testified that the traffic signal, the turning lane and the entire system was designed by Lauricella’s consultants and paid by Lauricella for the purpose of having a protected turn for entering and exiting the FedEx/Kinko’s property.
 

 From the testimony presented to the jury, we find Lauricella proved it was entitled to severance damages by a preponderance of the evidence for the alteration of the traffic control signal.
 

 Lauricella’s First Assignment of Error
 

 Lauricella contends the jury failed to consider the loss in value of the building when awarding severance damages by ignoring Mr. Ragas’ division of the | ^severance damages into damages for the building at $450,500.00 and damages for the land at $984,475.00. Lauricella avers that since the jury’s award of severance damages was almost exactly mid-point between DOTD’s appraiser’s testimony and Ragas’ testimony of severance damages attributable to the land, the jury clearly erroneously left out the damages to the building in assessing damages.
 

 The assessment of the appropriate amount of damages by a jury is a determination of fact that is entitled to great deference on review.
 
 Smith v. State, Dept. of Transp. & Development,
 
 04-1317 and 04-1594, p. 18 (La.3/11/05); 899 So.2d 516, 527,
 
 rehearing denied,
 
 04-1317 (La.5/13/05). Our rules of manifest error state that before a fact finder’s verdict may be reversed, there must be evidence within the record, such that a reasonable factual basis does not exist for the verdict, and the record establishes the verdict is manifestly erroneous.
 
 State, Dept. of Transp. & Development, v. Schwegmann Westside Expressway, Inc., supra.
 
 An appellate court should not upset factual findings of a trial court absent manifest error or unless clearly wrong.
 
 Id.
 

 The jury awarded a total of $608,107.00 on the “SPECIAL JURY INTERROGATORIES/VERDICT” form as just compensation for the damages to the remainder of the land and improvements on the FedEx/Kinko’s site as a result of the tak
 
 *723
 
 ing of Parcel 23-3. From this form alone, we cannot discern exactly what the jury considered when determining that amount. However, the jury was presented expert testimony from both parties as to the value of the building and the land and was free to accept or reject any part of the testimony. Because the jury award is given deference on review, we will not disturb its finding because there is evidence in the record to support that award of severance damages.
 

 Lauricella’s Second Assignment of Error
 

 Lauricella argues the jury committed reversible error in failing to award the | ^undisputed amount owed in lost rentals. Lauricella contends the jury likely misapplied the law in view of the misleading jury instructions and improper admission of evidence. In addition, Lauricella argues that DOTD has not offered any record evidence to refute the lost rental income claim.
 

 DOTD avers the jury’s refusal to award lost rent damages was reasonable based on the evidence presented (or lack thereof) at trial. Contrary to Lauricella’s contentions, DOTD argues the claim for lost rent was challenged on several bases by DOTD. DOTD contends that the most notable argument was that the voluntary reduction in rent was only arguably due to effects of other parts of the Project, not the taking of Parcel 23-3; and, if this claim was based on other actions of DOTD,
 
 ie.,
 
 the anticipated alterations to the traffic signal, then those actions have not occurred, and it was within the jury’s purview to consider whether this claim was too remote and speculative to be rewarded. Additionally, DOTD argues the jury is presumed to have considered the testimony of Mr. Lau-ricella; the report of Dr. Ragas, which was written months before the trial; and, the law that the opinions of an expert are merely advisory in nature, and a jury is free to accept or reject expert opinion.
 

 As previously mentioned, the award of damages is a determination of fact and is entitled to great deference on review.
 
 Smith v. State, Dept, of Transp. & Development, supra.
 
 Additionally, the appellate court will not upset a finding of the trial court absent manifest error.
 
 State, Dept, of Transp. & Development v. Schwegmann Westside Expressway, Inc., supra.
 

 Mr. Lauricella testified Lauricella amended FedEx/Kinko’s lease upon renewal in November of 2009 after FedEx/Kinko’s learned of the Project and its effects on the property. He said FedEx/Kinko’s made known its intention to move |17to another location. As a result, he stated the monthly rental was reduced to $9,000.00 per month from the previous $14,700.00 per month lease, and the new lease term was one year as opposed to the previous five-year lease term. Mr. Lauri-cella also testified that, had FedEx/Kinko’s signed for another five-year term, the lease would have been for $17,400.00 per month. Moreover, Mr. Ragas testified that Lauricella would lose $8,400.00 per month in rent as a result of FedEx/Kinko’s decision to leave. However, no testimony from a FedEx/Kinko’s representative was offered to the jury to explain its position on why it renegotiated the lease.
 

 Although DOTD offered no evidence during the trial to address Lauricella’s lost rental claims, we give deference to the jury in its finding that Lauricella was not entitled to lost rental income and infer that the testimonies of Mr. Lauricella and Mr. Ragas in reference to lost rental income were rejected by the jury. Therefore, we do not find the jury was clearly wrong in failing to award Lauricella lost rental income.
 

 
 *724
 
 DECREE
 

 For the foregoing reason, we affirm the denial of the Motion for Directed Verdict. Furthermore, we affirm the jury verdict awarding Lauricella just compensation for the damages to the remainder of the land and improvements on the FedEx/Kinko’s site as a result of the taking. The request for attorney’s fees incurred in responding to DOTD’s appeal by Lauricella is denied. Each party is to bear its own costs for this appeal.
 

 AFFIRMED
 

 1
 

 . The individual State Project numbers for this Project are 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, 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, 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, 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, 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, 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, and 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.
 

 2
 

 . Pursuant to a Joint Motion to Sever and/or Bifurcate Proceedings, The Pep Boys — Man-ny, Moe & Jack, Inc. claims were allowed to be tried separately. Those claims for additional compensation were settled with DOTD.
 

 3
 

 . It is noted that only two of Lauricella's assignments of error are being considered by this Court. Lauricella raised two other assignments of error in its Answer concerning the amount of the just compensation for the damages to the remainder of the property and the taking of a construction servitude; however, those assignments were not briefed. The other assignments of error are considered as abandoned.
 
 See
 
 Uniform Rules — Courts of Appeal, Rule 2-12.4.