MARC E. JOHNSON, Judge.
| sPlaintiffs/Appellants, Ms. Dottie Adams, et al., appeal the sustaining of the peremptory exceptions of prescription in favor of Defendants/Appellees, Conoco-Phillips Company (hereinafter referred to as “Conoco”) and Shell Oil Company, Shell Offshore, Inc. and SWEPI LP (hereinafter collectively referred to as “Shell”) from the 24th Judicial District Court, Division “K”. For the following reasons, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
On October 11, 2005, Plaintiffs filed suit for personal injuries and property damages in the 24th Judicial District Court alleging they were harmed when radioactive material (“NORM” and “TERM”) was released into the atmosphere during the cleaning, maintenance, and repair of used tubulars at a pipe yard in Harvey, Louisiana from 1946 to 1992. On October 19, 2005, Plaintiffs filed a “First Supplemental and Amending Petition” indicating their desire to opt-out of the proposed class and mass tort actions filed in the Civil District Court for the Parish of Orleans (hereinafter referred to as “CDC”). The previously filed CDC suits are: In re Harvey TERM, No. 01-8708 and all consolidated cases, Div. “D,” Civil District Court for the Par *1085 ish of Orleans, State of Louisiana; and Lester v. Exxon Mobil Corp., No. 02-19657, Div. “N”, Civil District Court for the Parish of 14Orleans, State of Louisiana. Thereafter, on November 20, 2007, Plaintiffs filed a second amended petition and added hundreds of new plaintiffs. Meanwhile, in the CDC for the Parish of Orleans, Plaintiffs, Shell and Conoco as “Settling Parties” submitted the “Preliminary Harvey Term Class Action Settlement Agreement” (hereinafter referred to as “the Settlement Agreement”), which set forth the terms, conditions and provisions of a proposed settlement of the In re Harvey Term litigation, to the CDC for approval in the “Joint Motion and Incorporated Memorandum in Support for Preliminary Approval of Settlement and Certification of Settlement Class” (hereinafter referred to as “the Joint Motion”) filed on January 11, 2010.
In the 24th JDC, Plaintiffs attempted to amend their Petition a third time by filing another “Motion to File Second Supplemental and Amending Petition for Damages” on November 9, 2010. However, Chevron, Texaco and Shell opposed the motion. After a hearing on the merits, the trial court denied Plaintiffs’ motion to amend. On March 29, 2011, all parties, with the exception of Exxon Mobil Corporation and ITCO[1], moved for a continuance of the hearing on the exceptions and the trial on the merits pending the review of the Settlement Agreement by the Louisiana Fourth Circuit Court of Appeal. The motion to continue was granted. Subsequently, Shell filed a peremptory exception of prescription on May 16, 2011, asserting Plaintiffs’ action had prescribed because they had filed it more than one year after becoming aware of the connection with the alleged injuries and the alleged hazardous activities conducted by the defendants and had specifically opted out of In re Harvey TERM and Lester v. Exxon Mobil Corp. Conoco adopted Shell’s peremptory exception and memorandum on May 18, 2011. In connection with Shell and Conoco’s exceptions, Plaintiffs entered into a stipulation in which |fithey declared that they filed the instant action “in order to opt out of the proposed class action in In Re Harvey TERM.” After a hearing on the exceptions, the trial court entered a judgment sustaining Cono-co’s exception of prescription on June 3, 2011 and Shell’s exception of prescription on June 7, 2011, dismissing Plaintiffs’ claims with prejudice. The instant appeal followed those judgments.
ASSIGNMENTS OF ERROR[2]
On appeal, Plaintiffs raise the following assignments of error: 1) the trial court erred in sustaining the exceptions of prescription from Conoco and Shell in the face of clear and direct renunciation of prescription by those exceptors; and 2) the trial court erred in recognizing Warren Lester, et al. v. Exxon Mobil Corporation, et al., 09-1105 (La.App. 5 Cir. 6/29/10); 42 So.3d 1071, as the legally binding authority for the prescriptive pleas by exceptors, Conoco and Shell, because Lester is incon *1086 sistent with the law of other circuits and federal courts and should be reversed.
LAW AND ANALYSIS

Renunciation of Prescription

Plaintiffs argue the trial court erred in sustaining the peremptory exceptions of prescription in favor of Defendants because they renounced their right to raise the exception of prescription. Plaintiffs contend Defendants renounced prescription by participating in the Settlement Agreement. Plaintiffs aver the Joint Motion, which included the “Notice Plan” and “Notice,” comprised not merely an “agreement” or a “contract” to pay $25,000,000.00 to all of the petitioners in the actions; but rather, it is a judgment giving the agreement the force and authority of |fiIaw. Plaintiffs further contend Defendants, as “Settling Defendants,” displayed a disinclination to plead prescription by participating in the Joint Motion for settlement and moving for a continuance on May 29, 2011, reciting the settlement as the basis for the continuance. Plaintiffs argue Defendants were well aware of the Lester decision at the time they moved for a joint continuance and at the time of the hearing.
In opposition, Defendants aver the trial court correctly determined they did not renounce their right to plead prescription. Defendants maintain the Joint Motion is replete with numerous express reservations of the Settling Defendants’ rights and defenses, making it clear that the Settling Defendants did not tacitly renounce any defense, including the plea of prescription. Defendants note they have consistently denied that they are liable to Plaintiffs. Defendants also argue the Settlement Agreement is not binding because there is no final judgment approving the agreement. Defendants further aver they only sought a continuance in the trial court due to the potential settlement then pending in the CDC, and they did not intend to withdraw their exceptions or clearly renounce prescription.
In reviewing a peremptory exception of prescription, the standard of review requires an appellate court to determine whether the trial court’s finding of fact was manifestly erroneous. Taranto v. Louisiana Citizens Property Ins. Corp., 10-0105 (La.3/15/11); 62 So.Sd 721, 726. An appellate court should not upset factual findings of a trial court absent manifest error or unless clearly wrong. State, Dept, of Transp. and Development v. Lau-ricella Land Company, L.L.C., 10-790 (La. App. 5 Cir. 4/28/11); 65 So.3d 712, 718, citing State, Dept, of Transp. & Development v. Schwegmann Westside Expressway, Inc., 95-261 (La.3/1/96); 669 So.2d 1172, 1177. Although the factfinder is afforded deference, appellate courts have a duty to review the facts. Id.
| jurisprudence provides that statutes involving prescription are strictly construed against prescription and in favor of the obligation sought to be extinguished. Taranto, supra. Renunciation may be express or tacit. LSA-C.C. art. 3450. Tacit renunciation results from circumstances that give rise to a presumption that the advantages of prescription have been abandoned. Geiger v. State ex rel. Dept, of Health and Hasp., 01-2206 (La.4/12/02); 815 So.2d 80, 86. Louisiana courts have consistently held that renunciation must be clear, direct, and absolute, and it must be manifested by words or actions of the party in whose favor prescription has run. Id., citing Lima v. Schmidt, 595 So.2d 624 (La.1992). Renunciation of prescription destroys the effect of prescription that has already run. Neese v. Papa John’s Pizza, 10-15 (La.App. 5 Cir. 6/29/10); 44 So.3d 321, 328.
*1087 In order to determine whether Defendants renounced prescription, we will first review their words and actions regarding the Settlement Agreement and the litigation at bar.
Like the agreement in Kenner Fire Fighters Ass’n Local No. 14-27 v. City of Kenner, 09-129 (La.App. 5 Cir. 9/29/09); 25 So.3d 147, the Settlement Agreement in this matter is a compromise. A compromise is a written contract. Id. at 149. The compromise instrument is the law between the parties and must be interpreted according to the parties’ true intent. Id. The compromise instrument is governed by the same general rules of construction applicable to contracts. Id.
On the first page of the Settlement Agreement, the following basic tenets are set forth in the second paragraph:
This PSA [Preliminary Settlement Agreement] sets forth the terms, conditions, and provisions of a proposed settlement of the In Re: Harvey TERM Litigation (the “Litigation,” as further defined in Paragraph 1.0 of this PSA) that will become effective only upon: (a) execution by all parties described above; (b) final approval granted by lathe Civil District Court for the Parish of Orleans, State of Louisiana; and (c) the occurrence or satisfaction of all other events and conditions provided for herein, all as set forth below. In the event that this PSA does not become effective, then the terms of this PSA shall be null and void, except only as hereinafter provided, the Litigation shall proceed as if no settlement had ever been attempted; and Settling Defendants shall be entitled to exercise all rights to defend themselves on the merits of this Litigation and to contest, on appeal or otherwise, whether this case should or can be maintained as a class action under Article 591 of Louisiana Code of Civil Procedure.
Under “Contingent Conditions” of the “Terms of Agreement” section, the Settlement Agreement provides,
Each Settling Defendant’s obligation to pay its allocated share of the Settlement Fund under this Agreement is and shall be contingent upon: (1) certification of a Court-Approved Settlement Class in accordance with the definitions and criteria set forth in this PSA; and (2) expiration of any period of appeal from the Court’s Final Approval of this Settlement, or, if appeal, approval of the Settlement and the Final Order and Judgment is made final.
In the “Entry of Final Orders and Judgments and Releases” area of the “Terms of Agreement” section, the following is provided regarding the instance if a final approval is not received:
C. In the event this Settlement does not receive Final approval, this Settlement and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed, understood or construed to be an admission of or evidence of liability or fault on the part of the Settling Defendants or Released Parties, and shall not be admissible in any proceeding for any purpose, except to enforce this Agreement. All Parties shall be deemed to stand in the same position as existed prior to execution of this PSA. Settling Defendants and the Released Parties continue to deny liability for all claims made against them by the Settling Plaintiffs.
A reading of the terms of the Settlement Agreement is clear that Plaintiffs and Defendants intended to settle this matter. As of date, a final approval of the Settlement Agreement is still pending in the *1088 CDC.[3] Unless a final approval is denied, the Settlement Agreement is the law between these parties. The Settlement | (Agreement does not provide for the pleading of any motions or exceptions by any of the Settling Parties without the denial of a final approval or the withdrawal of a defendant. Thus, it is evident from the terms of the Settlement Agreement that Defendants renounced their rights to plead any exceptions. In the event the Settlement Agreement is not approved according to the specified terms, Defendants are restored to their status prior to the agreement and can then file any appropriate pleadings.
In furtherance of Plaintiffs’ and Defendants’ intent to settle this matter, the parties filed a Joint Motion to Continue on March 29, 2011. The motion requested a continuance in order to permit the Louisiana Fourth Circuit Court of Appeal to render a judgment that would resolve the issues pending before the 24th JDC and render them moot. Defendants’ participation in the motion proves they intended to settle the matter and not pursue a peremptory exception of prescription.
Therefore, through their words and actions, we find Defendants tacitly renounced their rights to plead prescription against Plaintiffs through their participation in the Settlement Agreement and the Motion to Continue. As such, based upon the facts of this case, we find the trial court was manifestly erroneous in sustaining Defendants’ peremptory exceptions of prescription and reverse the trial court’s ruling. Because we are reversing the trial court’s ruling on this issue, there is no need for us to address Plaintiffs’ second assignment of error.
DECREE
For the foregoing reasons, we reverse the trial court’s judgments sustaining Shell and Conoco’s peremptory exceptions of prescription and remand the matter to the trial court. Shell and Conoco are assessed the costs of this appeal.

REVERSED AND REMANDED

. Exxon Mobil Corporation and ITCO later withdrew their opposition to the motion to continue.

. Plaintiffs also appealed the sustaining of the declinatory exception of insufficient service of process in favor of Defendants/Appellees, Joseph Grefer, Camille Grefer, Henry Grefer, Rose Marie Grefer, Chevron U.S.A. and Texaco, Inc. and the denial of their "Motion for Leave to File Second Supplemental and Amending Petition for Damages.” However, Plaintiffs filed a "Motion to Withdraw Discrete Issues on Appeal Herein” to withdraw those issues, which was granted by this Court. Therefore, only the remaining issues are mentioned in this opinion.

. See Pollard v. Alpha Technical, 10-0788 c/w 10-805 (La.App. 4 Cir. 8/12/11), - So.3d -; writ denied, 11-1969 (La. 11/14/11); 75 So.3d 946, for review of the remand instructions to the CDC regarding the Settlement Agreement.